UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PENNY SONS,                                    )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )   CASE NO. 1:05-cv-0516-DFH-TAB
                                               )
HENRY COUNTY,                                  )
                                               )
                    Defendant.                 )


ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


Plaintiff Penny Sons worked as a 911 telecommunications officer and
supervisor for the Henry County Sheriff's Department from October 1991 until she
submitted her resignation on January 6, 2004.  The parties agree that defendant
Henry County is the governmental entity that employed Sons.


After she tested positive for illegal drug use, lied to her supervisors, and
falsely altered a prescription that she submitted to excuse the drug use, Sons
tendered a letter of resignation.  In this lawsuit, Sons alleges that Henry County
violated her rights under the Fourteenth Amendment to the United States
Constitution by constructively discharging her.  She seeks relief under 42 U.S.C.
§ 1983.  Sons contends that she was entitled to a hearing before the alleged
constructive discharge, that she should have been given a chance to participate
in a drug treatment program as an alternative to disciplinary charges, and that

the defendant deprived her of this opportunity.  Sons also alleges that the defendant violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, when it twice denied her leave that she would have used  to deal with her substance abuse problem.

Defendant Henry County has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons explained below, summary judgment is granted in favor of the defendant on Sons' § 1983 claim(s). The court also orders the plaintiff to show cause why summary judgment should not be granted for Henry County on her FMLA claim on the ground that the alleged violations of the FMLA did not cause any compensable loss.[1]

### *Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no

---

[1]In her complaint, Sons alleged two additional claims:  (1) the defendant deprived her of a liberty interest in her good name, reputation, honor, and integrity without due process of law, and (2) the defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*  Sons has acknowledged in her response to the defendant's motion to dismiss (Docket No. 29) that there was insufficient evidence to maintain these two claims.  The court therefore grants summary judgment on these claims in favor of the defendant.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000). Because "summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* A district court may enter summary judgment *sua sponte*, but only if the parties have fair notice of the possibility and a fair opportunity to come forward with evidence showing that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999).

*Facts for Summary Judgment*

Plaintiff Penny Sons was employed as a 911 telecommunications officer by Henry County beginning in October 1991.  In January 2000, the Henry County Sheriff's Department instituted an anti-drug policy that covered department employees including Sons.  Under the policy, employees were selected at random and required to submit a urine sample that was screened for the presence of illegal drugs.  Screening included substances that may be obtained legally, such as by prescription.  Employees were subject to termination or other discipline for: (1) violating the criminal drug statutes in any jurisdiction; (2) failing to appear for drug testing as instructed; (3) attempting to provide a false test sample; or (4) failing to follow recommended or required treatments, or failing to successfully complete the Employee Assistance Program as directed.

On at least three or four prior occasions, Sons had taken and passed drug tests.  Trouble began, however, when Sons learned on December 16, 2003 that she was scheduled for a test two days later.  Sons had been taking a diet pill called Didrex for about a week prior to the test.  Sons had obtained the Didrex legally, but her prescription was one-and-a-half to two years old and had long-since expired.  Sons also had been taking Adderall for one or two months prior to this drug test without a prescription.  The drug had been prescribed and intended for use by her son.

Because of a change in work schedule, Sons went shopping in Ohio with her husband instead of reporting for testing on December 18, 2003. Jay Davis of the Sheriff's Department contacted her later that day as a reminder, at which point she returned to New Castle, Indiana to submit the requisite sample. Realizing on the way that she would test positive because of her use of Adderall, Sons decided to admit her drug use to supervisors Butch Baker and Scott Pinkerton before trying to submit her urine sample. In a meeting with Baker and Pinkerton, Sons admitted that she was using Adderall and Prozac.[2] She failed to mention her use of Didrex. At some point in this meeting, Sons claims, she asked Baker and Pinkerton if there was any way she could file for FMLA leave instead of taking the drug test. According to her, this request was denied. She then went ahead with the drug test but could not produce a urine sample sufficient for analysis.

Sons returned to work the next day (December 19, 2003) and took a drug test at the medical center in New Castle. A few days later Sons was contacted by Midwest Toxicology, the company that screened her urine sample. Midwest informed Sons that she had tested positive for methamphetamine. The next day, Midwest Toxicology informed Sons that Didrex could cause the positive methamphetamine result. The company then passed Sons' results along to Henry County.

---

[2]Sons apparently had a valid prescription for Prozac at the time of the test.

Sons and her husband then met with Sheriff Cronk and Baker to discuss the positive test.  At this meeting, Sons informed Sheriff Cronk and Baker that she was taking Didrex and Adderall.  She admitted not having a prescription for Adderall and did not provide them with a prescription for Didrex.  Instead Sons faxed her prescription for Didrex to Midwest Toxicology.  She did so, however, only after altering the date from "1999" to "2002" to make the prescription seem more recent.  Midwest then forwarded its copy of Sons' altered prescription to the Sheriff's Department.

Sons and her husband met again with Sheriff Cronk and Baker on December 29, 2003.  Baker asked Sons if she had changed the date on the prescription; Sons told him that she had not.  Baker warned Sons that she would be fired if he discovered that she had altered the prescription.  At some point, Sons asked Sheriff Cronk what he would do in her circumstances.  Sheriff Cronk advised Sons that: "if she did falsify the documents and there's potential for criminal charges, I would resign from my position to salvage my record [rather] than keep her employment."  Cronk Dep. 43.  At this point Sheriff Cronk did not know whether criminal charges would be brought or whether Sons was guilty.  He testified that he was merely giving his opinion as requested by Sons.

The next day, Sons confessed to Baker that she had in fact changed the date on her Didrex prescription.  On January 3rd or 4th, plaintiff claims that she called Sheriff Cronk and once again asked for FMLA leave, this time on advice of

-6-

her doctor at the Anderson Center (a drug rehabilitation center).  According to Sons, Sheriff Cronk told her that she could not file for leave at that time.

Baker pursued an investigation into the circumstances surrounding Sons' positive drug test and possible falsification of the prescription.  He sent Sons an affidavit on January 5, 2004 notifying her that an investigation had been initiated while also informing her of the charges against her.  These were:  (1) failing the drug test, (2) altering and submitting forged documents, and (3) lying to superiors.  The affidavit also informed Sons that Baker believed these charges constituted just cause for her suspension, demotion, or discharge.  The next day (January 6th), Sons submitted her resignation letter to Pinkerton.

The Henry County Sheriff's Department Anti-Drug Policy included an Employee Assistance Program ("EAP").  Under the EAP an employee discovered to have an alcohol or substance abuse problem would receive evaluation and treatment from specialists.  At no point did anyone at the Henry County Sheriff's Department refer Sons to this program before she submitted her resignation on January 6th.

*Discussion*

Sons now claims that the defendant deprived her of continued employment and a perquisite of her job without due process of law.  She specifically alleges that the anti-drug policy mandated that she be given a chance to rehabilitate

-7-

herself through the EAP rather than face disciplinary charges.  Sons seeks relief for this alleged violation of her constitutional rights under 42 U.S.C. § 1983. Plaintiff also claims the defendant interfered with her rights under the FMLA by twice denying requests for leave.

I.      *Sons' § 1983 Claim*

Sons' § 1983 claim has two closely related but analytically distinct aspects. First, Sons claims that the defendant deprived her of her continued employment as a 911 officer without due process of law.  Sons also claims that she was deprived of a protected perquisite of employment when the defendant pursued disciplinary charges instead of referring her to its Employee Assistance Program. That issue is necessarily bound up in her primary § 1983 claim, but the court will also address the alleged deprivation of the EAP perquisite as a separate matter.

A.      *Deprivation of Sons' Interest in Continued Employment*

Sons claims, and the defendant does not dispute, that she had a protected property interest in continued employment.  A public employee like Sons may not be deprived of a property interest in continued employment without due process of law, ordinarily prior notice of the grounds for the deprivation and an opportunity to be heard.  See generally *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985).

-8-

The fundamental difficulty for Sons' due process claim is the fact that the defendant never fired Sons. She resigned. As the Seventh Circuit has made clear: "If an employee does resign voluntarily, there is no deprivation and so no right to [procedural due process]." *Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir. 1988). The rationale behind this rule is both prudent and clear. An employer cannot be expected to provide an employee with due procedural protections of notice and a hearing if the employee has chosen to leave. The evidence in this case includes a letter dated January 6, 2006 and signed by the plaintiff:

> As of today's date, I, Penny R. Sons resign my position as 911 Telecommunications Officer / Supervisor with the Henry County 911 Emergency Services.

Sons Dep. Ex. A-2.

Sons disputes the voluntariness of this resignation and claims that the defendant constructively discharged her. In unusual cases, it may be possible to base a due process claim on a theory of constructive discharge. See, *e.g.*, *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir. 1984) (affirming jury verdict for plaintiff; police officer was constructively discharged when he was assigned to sit in a windowless storage closet with a desk and chair but no other furniture and no telephone, and was given no duties to perform). Constructive discharge occurs when a defendant engages in "harassing behavior sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment, and that the abusive working environment became so intolerable that her resignation qualified as a

fitting response." *Witte v. Wisconsin Dept. of Corrections*, 434 F.3d 1031, 1035 (7th Cir. 2006). This is not an easy standard to meet: "Working conditions for constructive discharge must be even more egregious than those that would support a finding of a hostile work environment; absent extraordinary circumstances, an employee is expected to remain employed while seeking redress." *Id.* at 1035-36. Constructive discharge must be reserved for unusual cases; otherwise, an employee facing disciplinary action could simply resign and be guaranteed a valid federal due process claim. No employer will provide a pre-termination hearing to an employee who has just resigned.

According to the plaintiff, the conditions for constructive discharge were met when Henry County threatened to bring public disciplinary and criminal charges over Sons' positive drug test and subsequent cover-up efforts rather than allow her to participate in the EAP as an alternative to any public disciplinary action.

The Sheriff's Department's Anti-Drug Policy lends some arguable support to Sons' claim that she should have at least been directed to the EAP at some point. Section V(C) of the policy provides:

> Any employee voluntarily acknowledging an alcohol or other substance abuse problem will be given a reasonable opportunity to deal with the problem.

Anti-Drug Policy § V(C).[3]  (It is not at all clear that her admission was voluntary when she made it only as she faced a drug test she expected to fail, but the court need not resolve that question.)  Section V(D) provides in part:

> Employees with confirmed positive tests will be directed to the EAP for assistance and be required to follow other recommendations or requirements aimed at resolving a substance abuse problem.

*Id.* at § V(D).  It is not clear that Section V(D) was intended to give an employee a right to use the EAP, as distinct from imposing an obligation on them to participate in the EAP.  In any event, Sons assumes too much when she claims that a "reasonable opportunity to deal with the problem" necessarily included the right to be free of all disciplinary action.  Other parts of the policy make this clear. Section V(D) also states in part:

> In addition to the above [provision regarding mandatory EAP referral after a positive drug test], employees may face disciplinary action.

*Id.* at § V(D).  A subsequent section notes:

> Employees with a confirmed test result showing a legal drug used illegally (e.g. Tylenol 3 or another person's prescription) may be suspended up to fifteen (15) days as permitted by Indiana law.

*Id.* at § VI(B).

---

[3]Henry County's failure to direct the plaintiff to the EAP is addressed below.

-11-

Sons admitted to her supervisors at the 911 Center that she was taking Adderall on the day she was supposed to take her mandatory drug test. Assuming for purposes of argument that this admission would count as voluntary, her admission might have placed her within Section V(C), which offered a reasonable opportunity to deal with the problem. Her positive drug test made her subject to Section V(D) calling for a referral to the EAP. The policy did not mean, however, that any and all disciplinary proceedings against Sons were barred.

As applied here, Sections V(C) and V(D) mean at most that Sons' admission of drug use and positive drug test could have promised her: (1) an opportunity to receive treatment via the EAP, and (2) that the outcome of any disciplinary proceeding for her drug violation had to give her "a reasonable opportunity to deal with [her drug] problem." For example, while Section V(C) would prevent the Sheriff's Department from immediately terminating a person who voluntarily admitted drug use, the employee could be placed on probation or even suspended until he or she successfully completed treatment. Sons' reading of the policy, in contrast, would create a safe haven where any employee confronted with an imminent drug test could avoid all punishment by hastily admitting her drug use. That reading ignores the policy's provisions for disciplinary action.

More important, in addition to her admitted drug violation, Sons also faced disciplinary charges for falsifying her prescription and lying to her superiors. Henry County was entitled to treat these acts – distinguishable from her violation

of the drug policy – as serious acts of misconduct.  These acts of misconduct are not disputed on this record.  Regardless of the anti-drug policy's protections regarding drug violations, nothing in the policy barred the defendant from pursuing disciplinary charges for Sons' dishonesty, which is undisputed for purposes of summary judgment.

When Sons tested positive and her cover-up efforts were discovered, she legitimately faced the prospect of disciplinary and possibly criminal charges.  The mere specter of a *legitimate* disciplinary proceeding is not enough to amount to constructive discharge.  See *Witte*, 434 F.3d at 1037 (holding that an employee "subjected to a steady stream of complaints, disciplinary proceedings, and the occasional sanction" was not constructively discharged absent evidence that these actions were taken solely harass him).  Neither is the fact that Sheriff Cronk and Baker gave Sons fair warning about the charges she faced.  Baker advised Sons that he would try to fire her if it came to light that she had falsified her Didrex prescription.  This warning was not misleading or harassing.  Nothing in the anti-drug policy or any other department policy barred Baker from taking such action.  Sheriff Cronk advised Sons that he would resign rather than risk his reputation if he were caught falsifying documents.  There is no evidence that he answered this hypothetical question with any intent to mislead or harass Sons.  She asked for his honest advice.  The undisputed facts show she received it.

While resignation might have been a reasonable response for Sons in this case, it was not due to any harassing behavior on the part of the defendant. The plaintiff's claim of constructive discharge therefore cannot stand, and her resignation must be deemed voluntary. Accordingly, plaintiff cannot maintain her § 1983 claim for loss of continued employment with Henry County.

B.   *Deprivation of Sons' Interest in EAP Participation*

Sons contends that the defendant also deprived her of a protected property interest by denying her the chance to participate in the Employee Assistance Program. "The protections of the Due Process Clause apply to government deprivation of those perquisites of government employment in which the employee has a constitutionally protected 'property' interest." *Gilbert v. Homar*, 520 U.S. 924, 928 (1997), quoted in *Luellan v. City of East Chicago*, 350 F.3d 604, 613 (7th Cir. 2003) (holding that Indiana police officer did not have protected property interest in "on-call pay"); accord, Townsend v. Vallas, 256 F.3d 661, 676 (7th Cir. 2001) (teacher who was reassigned to new duties with pay, but who temporarily lost ability to earn additional coaching income, was not deprived of property interest). These protected property interests are matters of state law; they "can arise from such state law sources as statutes, contracts, legally binding rules and regulations, or the 'unwritten common law' of employment." *Moulton v. Vigo County*, 150 F.3d 801, 804 (7th Cir. 1998), citing *Lawshe v. Simpson*, 16 F.3d 1475, 1480 (7th Cir. 1994).

Sons' contends that the defendant's own anti-drug policy creates just such a property interest in EAP participation. Section V of that policy reads:

> A supervisor who has knowledge or a reasonable belief that an employee is abusing alcohol or illegal drugs *must*, with the approval of the Sheriff, direct the employee to the EAP for evaluation.
>
> ....
>
> Employees with confirmed positive tests *will* be directed to the EAP for assistance and be required to follow other requirements aimed at resolving a substance abuse problem.

Anti-Drug Policy, § V *et seq.* (emphasis added).  Sons contends that the mandatory language of these provisions gave her and her other employees a property right to an EAP referral upon discovery of a substance abuse problem.  Sons contends that her right to an EAP referral first vested when she admitted to Scott Pinkerton and Butch Baker that she was taking Adderall and asked if she could "go on and try to get myself taken care of."  Sons Dep. 132.  At a minimum, Sons contends, her right to an EAP referral arose when her drug abuse was confirmed by her positive urine test.

This claimed right to secure treatment is certainly an unusual form of a claimed property interest, especially in light of *Luellen* and *Townsend*.  But the court does not base its decision on this claim on whether the anti-drug policy did or did not create a property interest.  Assuming that such a property interest existed, plaintiff would still need to offer evidence that the defendant actually *deprived* her of that property interest. See *Patterson*, 853 F.2d at 1406.  Assuming

-15-

that the anti-drug policy required the EAP to be offered at some point to the plaintiff, nothing in the policy mandated precisely *when* the plaintiff was supposed to receive this benefit.  Though the defendant did not immediately refer Sons to the EAP, it could have done so concurrently with or prior to any disciplinary action it took and still satisfied any obligation it might have had under the anti-drug policy.  If the plaintiff had actually been terminated or otherwise punished by the defendant without receiving access to the EAP, the deprivation – and hence the arguable due process violation – might then have been complete.  Instead, the plaintiff chose to resign voluntarily before that point ever arrived.  Under these circumstances, the Seventh Circuit's reasoning in *Patterson* forecloses this aspect of the plaintiff's § 1983 claim as well.  Henry County is entitled to summary judgment on Sons' § 1983 claims for denial of due process of law.

II.   *Sons' FMLA Claim*

Sons also seeks damages and equitable relief for the defendant's alleged interference with her rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*  Sons alleges that on two occasions she requested FMLA leave and that the defendant improperly denied both requests.

The FMLA entitles a qualifying employee to twelve weeks of unpaid leave a year if, among other things, she has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  Congress enacted the FMLA "recognizing that there will

be times in a person's life when that person is incapable of performing her work duties for medical reasons." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997).  Under the FMLA it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." 29 U.S.C. § 2615(a)(1).  Employers who violate the FMLA are "subject to consequential damages and appropriate equitable relief." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002).

Sons claims that she gave her first notice of leave on December 18, 2003, shortly before taking the drug test that she knew she would fail. Sons asked her supervisors Scott Pinkerton and Butch Baker "if there was any way I could file for Family Medical Leave Act, not to go on [with the drug test] to try to get myself taken care of." Sons Dep. 132.  Her supervisors replied that she "couldn't do that before [she] took a urine test."  *Id.* at 133.  Sons claims she made her second request for FMLA leave directly to Sheriff Cronk in early January 2004, just prior to submitting her resignation.  According to Sons, she told Sheriff Cronk that she was seeing a doctor and would need FMLA leave in order to finish her rehabilitation process.  *Id.* at 134.  The plaintiff alleges that Sheriff Cronk told her "it couldn't be done." *Id.*

Henry County contends that Sons' FMLA notices were inadequate as a matter of law.  To obtain leave under the FMLA, the employee must first provide adequate notice of her need for time off, at least in most cases.  Once the employee

has met her burden, it is then "the employer's responsibility to designate leave, paid, or unpaid, as FMLA-qualifying." 29 C.F.R. § 825.208(a). If the employer needs additional information to make this determination, it is "expected to obtain any additional information through informal means." 29 C.F.R. § 825.303(b).  If the employee failed to give adequate notice to begin with, however, "the employer can deny leave even if the employee has a serious health condition." *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006).  According to the defendant, it was justified in denying leave because Sons' notices were inadequate in a number of respects.  Henry County claims that Sons failed to:  (a) provide the necessary 30 days notice; (b) comply with Henry County's usual and customary notice requirements when she requested leave; (c) inform anyone of the anticipated duration of her leave; and (d) inform anyone that she was suffering from a serious health condition.  The court considers each of these in turn.

A.     *30 Day Advance Notice*

The FMLA generally requires employees with a *foreseeable* need for FMLA leave to provide employers with 30 days advance notice.  29 C.F.R. § 825.302(a). In cases where such advance notice is not possible, however, the FMLA allows employees to provide notice instead "as soon as practicable."  *Id.*; 29 C.F.R. § 825.303(a).  Though Sons did not give Henry County 30 days warning, she might have provided notice as soon as practicable.  A jury could reasonably conclude that the gravity Sons' substance abuse problem was not apparent to her until she actually faced the prospect of a drug test.  That is, the impending drug test could

have been the event that forced Sons to confront her drug problem head on.  At that time, Sons allegedly first asked for FMLA leave so that she could presumably confront her problem immediately.  Her failure to give 30 days notice does not support summary judgment.

B.   *Usual and Customary Notice Requirements*

Henry County also argues that while Sons may have provided oral notice, she failed to submit the necessary paperwork for the defendant to consider her claim properly.  Henry County argues that it required its employees seeking FMLA leave to fill out a "Request for Family or Medical Leave," a form issued by the U.S. Department of Labor.  Sons Dep. Ex. A-2 (a copy of Henry County's FMLA request form).  Sons admits that she only made oral requests for leave but alleges that she was unaware that the defendant required employees to submit a written form.

Though employees with an unforeseen need for FMLA leave must generally give notice that complies with their employer's internal rules and procedures, see 29 C.F.R. § 825.303(a) (excepting compliance with internal rules and procedures in cases of "medical emergency"), Sons has raised a genuine issue of fact regarding whether she was ever actually or constructively made aware of Henry County's rule requiring written notice.  See 29 C.F.R. § 825.301 (describing the employer's notice obligations to employees).  It would be unfair to allow an employer to deny FMLA leave for failure to follow its usual and customary notice requirements if the employer never tried to make its employees aware of its particular requirements.

The defendant has not come forward with any evidence that the written notice requirement was included in an employee handbook or any other notice to employees. Instead, the defendant claims that Sons admitted to actual knowledge of the written form. In fact, the meaning of her deposition testimony is unclear at best.[4] Further, the alleged FMLA request form offered by the defendant does not even appear to be intended for use by an employee at all. The form is instead an "Employer Response to Employee," where the *employer* provides written notice to the employee about whether that employee's request for FMLA leave has been approved or rejected. Given the state of the record on this issue, summary judgment is inappropriate on these grounds.

C.   *Notice of Duration of Leave*

The defendant also contends that Sons' initial FMLA requests were inadequate because they failed to include any mention of how long she intended to be absent. This theory mis-allocates the respective obligations of employees and employers under the FMLA. The FMLA entitles employers to know when a given employee will return to work, see *Collins v. NTN-Bower Corp.*, 272 F.3d 1006,

---

[4]Sons was asked by defendant's counsel: "I'd like to show you what has been marked as Defendant's Exhibit 5, and ask you to take a look at that. My understanding is that's the paperwork that county employees fill out to make a FMLA request, Family Medical Leave Act request." Sons Dep. 130. Sons replied, "Uh-huh." *Id.* This passage does not come close to establishing Sons' agreement that the defendant had a written form. In response to subsequent questions, Sons clearly stated that she had never seen the defendant's FMLA leave request form, had never filled out such a form, and had never submitted a request for leave in writing. *Id.* at 130-31.

1008 (7th Cir. 2001), but the employee need not include this information in her initial notice.   Rather, she must only "state that leave is needed." 29 C.F.R. § 825.303(b); see also *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004) (the employee does not need to "write a brief demonstrating a legal entitlement.  [She] just has to give the employer enough information to establish probable cause, as it were, to believe that [she] is entitled to FMLA leave").  Once the employee has communicated her need for leave, the burden shifts so that the employer is expected to use informal means to "obtain any additional required information," 29 C.F.R. § 825.303(b), including the employee's anticipated duration of absence.  According to Sons, she clearly stated her need for FMLA leave on two occasions, with no follow-up from the defendant.  The court must assume that the defendant, rather than making any inquiry about the duration of her absence, instead immediately denied Sons' requests.  The defendant's failure to ask the plaintiff about the expected duration of her absence forecloses its argument for summary judgment on these grounds.

   D.    *Serious Health Condition*

   The defendant also argues that it did not have sufficient notice that the FMLA actually applied because Sons failed to indicate that she was suffering from a serious medical condition.   Initial notice is "not satisfied by the employee's merely demanding leave.  He must give the employer a reason to believe that he's entitled to it." *Aubuchon*, 359 F.3d at 952.  Part of this obligation includes giving some indication that the employee actually has a qualifying reason for taking

leave, like a serious health condition.  See *Collins*, 272 F.3d at 1008 (7th Cir. 2001) (an employee merely stating that he is "sick" is not enough to imply a serious health condition and therefore does not provide adequate notice). However, an employer's actual or constructive knowledge of an employee's condition can satisfy that employee's obligation to mention explicitly a serious medical condition in her initial notice.  See *Hammond v. Interstate Brands Corp.*, 2002 WL 31093603, at *16 (S.D. Ind. Aug. 28, 2002), citing *Spangler v. Federal Home Loan Bank*, 278 F.3d 847, 852 (8th Cir. 2002).  This is not a situation where the defendant was left clueless about why Sons was seeking FMLA leave.  At a minimum, there is a triable issue in this case as to whether Sons' supervisors were actually or constructively aware of her substance abuse problem.  On December 18, 2003, the day Sons allegedly made her first request for leave, she admitted "to Scott Pinkerton and Butch Baker that she had consumed Adderall a [sic] class II controlled substance that was not prescribed to her."  Baker Aff. ¶ 1.  When Sheriff Cronk denied Sons' January 2004 request for leave, he knew that she had failed her drug test.  Under these particular circumstances, summary judgment is not warranted simply because Sons failed to mention explicitly that she was suffering from a serious health condition as part of her notice for leave.

E.     *Damages and Equitable Relief Under the FMLA*

Though genuine issues of material fact exist as to whether the defendant violated the FMLA, summary judgment for the defendant may still be warranted

because the record does not appear to support a claim for damages or equitable relief.  Particularly when dealing with remedial statutes such as the FMLA, "once it becomes clear that a plaintiff can recover nothing but a symbolic victory in that the defendant violated a statute, the lawsuit should be terminated." *Dawson v. Leewood Nursing Home*, 14 F. Supp. 2d 828, 832 (E.D. Va. 1998) (granting summary judgment in favor of the employer on an FMLA claim when the plaintiff failed to prove she suffered any damages as a result of the alleged violation).

An employer who violates the FMLA is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I).  If such remuneration was not denied, an employer may still be liable for "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee." 29 U.S.C. § 2617(a)(1)(A)(i)(II).  In addition, the court may award "such equitable relief as may be appropriate, including employment, reinstatement, and promotion."   29 U.S.C. § 2617(a)(1)(B).   Other kinds of damages, including punitive damages, nominal damages, or damages for emotional distress, are not recoverable.  See *Coleman v. Potomac Elec. Power Co.*, 281 F. Supp. 2d 250, 254 (D.D.C. 2003), citing *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001); *Settle v. S.W. Rodgers Co., Inc.*, 998 F. Supp. 657, 665-66 (E.D. Va. 1998); *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 772-72 & n.1 (M.D.N.C. 2000).

Sons does not appear in a position to request monetary damages as a result of the defendant's alleged FMLA violation.   Sons remained employed at Henry County 911 Services after she allegedly submitted both her requests for FMLA leave until her resignation on January 6, 2004.   Even if the plaintiff could show that she was entitled to paid FMLA leave, she does not allege that she went unpaid during this relevant period.   The record contains no evidence or other indication that Sons incurred any monetary losses or expenses as a direct consequence of being denied leave.

Equitable relief also appears to be unavailable in this case.   In her complaint, Sons asks the court to reinstate her to her former position with full seniority, benefits and wages.   In light of Sons' resignation, it would appear to be inappropriate to grant such relief.   Also, keep in mind that the undisputed facts show that she failed the drug test, lied to her supervisors, and falsified a prescription to try to excuse the failed drug test.

Sons might argue that she would not have resigned if the defendant had granted her FMLA leave.   It seems unlikely that a reasonable jury could reach that conclusion on the record.   Sons' theory of constructive discharge is based on the fact that her resignation was driven by fear of public disciplinary proceedings, not the denial of FMLA leave.[5]   FMLA leave would not have affected the disciplinary

---

[5]In her deposition, Sons stated:  "I was not going to let them fire me. I had too many years in to end it like that."  Sons Dep. 115.

hearings that she claims motivated her resignation; an employee who requests FMLA leave has no greater protection against her employment being terminated for reasons not related to her FMLA request than she did before submitting the request.  See 29 C.F.R. § 825.112(g) ("treatment for substance abuse does not prevent an employer from taking employment action against an employee"); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998) (noting that "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request").  Also, Henry County's anti-drug policy provided for both disciplinary consequences and treatment when an employee was discovered abusing illegal substances.

Accordingly, the court orders the plaintiff to show cause why summary judgment should not be granted for defendant on the FMLA claim.  To avoid summary judgment on her FMLA claim, the plaintiff must come forward with evidence showing a genuine issue of material fact as to whether she incurred recoverable damages as a result of the defendant's alleged denial of FMLA leave during the period between December 18, 2003, when she allegedly first requested FMLA leave, through January 6, 2004, when the plaintiff resigned from her job.

*Conclusion*

For the reasons discussed in this entry, Henry County's motion for summary judgment is GRANTED regarding the plaingtiff's § 1983 claims and her

ADA claim.  The plaintiff is further ordered to show cause **no later than November 30, 2006** why the court should not grant summary judgment in favor of Henry County regarding the plaintiff's FLSA claim.  Defendant may file a reply **no later than December 30, 2006**.  The trial set for December 11, 2006 and the final pretrial conference set for December 1, 2006 are hereby VACATED.  If necessary, the court will set new dates after deciding whether summary judgment should enter on the FLSA claim.

     So ordered.

Date: October 31, 2006

_____

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

John H. Haskin
HASKIN LAUTER LARUE & GIBBONS
jhaskin@hlllaw.com

Andrew G. Jones
HASKIN LAUTER LARUE & GIBBONS
ajones@hlllaw.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com